UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
FAIR HOUSING JUSTICE CENTER, INC.,

                              Plaintiff,

        -against-

203 JAY ST. ASSOCIATES, LLC, AMTRUST
REALTY CORP., AND WOODS BAGOT
ARCHITECTS, P.C.,

                              Defendants.

**MEMORANDUM & ORDER**
**21-CV-1192 (NGG) (JRC)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Defendants 203 Jay Street Associates, LLC, Amstrust Realty Corp., and Woods Bagot Architects, P.C.'s motions to dismiss. For the reasons set forth below, the motions are DENIED.

## I.   BACKGROUND

### A.   Factual Background

The following summary is drawn from the facts alleged in the Amended Complaint, which the court accepts as true. *See N.Y. Pet Welfare Ass'n v. City of N.Y.*, 850 F.3d 79, 86 (2d. Cir. 2017).

#### 1.   The Parties

Fair Housing Justice Center, Inc. ("Plaintiff" or "FHJC") "is a nonprofit organization dedicated to ensuring that all people have equal access to housing opportunities in the New York City metropolitan region." (Am. Compl. (Dkt. 15) ¶ 14.) In furtherance of this mission, Plaintiff provides counseling, legal referrals, and other services to individuals who have experienced housing discrimination. (*See id.* at ¶ 16.) Additionally, Plaintiff conducts investigations into housing discrimination. (*See id.*) In the course of these investigations, Plaintiff's employees "assume the role of

1

renters or homebuyers for the purpose of obtaining information about . . . whether housing discrimination is taking place." (*Id.* at ¶ 18.) In other words, the employees act as "testers" of the allegedly discriminatory condition.

Defendant 203 Jay St. Associates, LLC ("203 Jay") is a New York domestic limited liability company. (*See id.* at ¶ 25.) Defendant Amtrust Realty Corp. ("Amtrust") is a New York domestic business corporation. (*See id.* at ¶ 26.) These Defendants own the property referred to as the 203 Jay Street Condominium (the "Condominium"), located at 120 Nassau Street in Kings County, New York. (*See id.* at ¶¶ 7-8, 23-24; 203 Jay & Amtrust Mem. in Supp. of Mot. to Dismiss ("203 Jay Mot.") (Dkt. 22) at 2.) Defendant Woods Bagot Architects, P.C. ("Woods Bagot"), a New York Professional Corporation, designed the Condominium. (*See* Am. Compl. ¶ 34-35; 203 Jay Mot. at 2.)

    2.  The Investigation

This suit arises out of a series of investigations into the Condominium. (*See* Am. Compl. ¶ 39.) Plaintiff sent two testers to inquire about apartments on behalf of a wheelchair-bound relative. (*See id.* ¶ 43.) The testers were shown four apartments where they allegedly observed, among other things, heavy doors at the entrance to the building; narrow interior doors in the apartments; narrow kitchens; insufficient clear floor space in the bathrooms of certain apartments; and bathrooms with one-inch beveled thresholds. (*See id.* ¶ 44.)[1] Plaintiff subsequently sent two additional testers to similarly inquire about apartments on behalf of a wheelchair-bound relative. (*See id.* ¶ 45.) These testers made similar observations regarding the building and the apartments they were shown. (*See id.* ¶ 46.) Plaintiff also sent a consulting accessibility expert to the property. (*See id.* ¶ 47.) The

_____

[1] A beveled threshold is a door threshold with an incline that enables greater access for wheelchair users.

2

expert observed various defects in the building's accessibility including, but not limited to, a lack of accessible seating in the lounge on the building's 33rd floor and an excessively sloped route from the public sidewalk to the lobby on Concord Street. (*See id.* ¶ 48.)

### B. Procedural Background

Plaintiff filed its complaint on March 5, 2021. (*See* Compl. (Dkt. 1).) Following a July 27, 2021 pre-motion conference, Plaintiff filed the Amended Complaint on August 8, 2021. Plaintiff asserts claims under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*; the New York State Human Rights Law, Article 15 of the New York State Executive Law; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*; and the New York State Civil Rights Law § 40 *et seq.*, arising out of Defendants' failure to design and construct housing accessible to disabled individuals. Plaintiff seeks declaratory relief, compensatory and punitive damages, and a permanent injunction ordering Defendants to remove all violations of the aforementioned laws and to refrain from further discrimination on the basis of disability.

Defendants filed separate motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants assert that Plaintiff lacks standing and has failed to state a claim for relief. Defendant Woods Bagot further argues that Plaintiff's request for injunctive relief is inappropriate as to Woods Bagot and must be denied.

## II. STANDING

### A. Article III Standing

#### 1. Legal Standard

The United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'"

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).[2] If there is no case or controversy, a federal court lacks subject matter jurisdiction to hear a dispute, and the action must be dismissed. *See* Fed. R. Civ. P. 12(h)(3). To establish that the court has subject matter jurisdiction over a dispute, a plaintiff must satisfy Article III standing. *See Transunion*, 141 S. Ct. at 2203. The party "invoking the authority of the court bears the burden of proof on the issue of standing." *Lee v. Bd. of Governors of the Fed. Reserve Sys.*, 118 F.3d 905, 910 (2d Cir. 1997). This means that a plaintiff must show (i) a concrete, particularized, and actual or imminent injury in fact (ii) that is fairly traceable to the defendant and (iii) which would be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

An organization may establish standing by bringing claims on behalf of its members ("associational standing") or by demonstrating that the organization itself has suffered an injury for which it seeks judicial redress ("organizational standing"). *See N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). To establish associational standing, an organization must "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). By contrast, to establish organizational standing, an organization need demonstrate only that "it can independently satisfy the requirements of Article III standing." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). "Under this theory of 'organizational' standing, the organization is just another person—albeit a legal person—seeking to vindicate a right." *N.Y. Civil Liberties Union*, 684 F.3d at 294.

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

2. Discussion

Plaintiff "brings suit here under a theory of organizational standing, not one of associational standing." (Pl.'s Mem. in Opp. ("Opp.") (Dkt. 25) at 9.) "[B]ecause Plaintiff does not assert associational standing, the court need not speculate as to whether Plaintiff would have associational standing to raise claims on behalf of its members." *NYTDA, Inc. v. City of N.Y. Through Traffic Control Div. of N.Y.C. Police Dep't*, No. 11-CV-1836 (NGG) (MDG), 2013 WL 12358241, at *7 (E.D.N.Y. Aug. 28, 2013). Moreover, and contrary to Defendants' claims, a plaintiff asserting organizational standing need not identify an injured individual apart from the organization itself. *See N.Y. Civil Liberties Union*, 684 F.3d at 295 ("As [Plaintiff] does not sue on behalf of injured members, it need not identify any that have standing."). Rather, Plaintiff must allege only that it has suffered (i) an injury in fact (ii) that is fairly traceable to Defendants' conduct and (iii) for which judicial redress is available. *See id.* at 294.

"[O]nly a 'perceptible impairment' of an organization's activities is necessary" for an organizational plaintiff to establish an injury in fact. *Nnebe*, 644 F.3d at 157 (quoting *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993)). The Supreme Court and the Second Circuit have held that the diversion of organizational resources towards identifying and counteracting a defendant's discriminatory conduct constitutes such a perceptible impairment. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Ragin*, 6 F.3d at 905; *Nnebe*, 644 F.3d at 156-57. There need not be a dramatic diversion of resources to amount to an injury in fact; "some perceptible opportunity cost expended by the [organization]" is sufficient. *Nnebe*, 644 F.3d at 157.

In the context of housing organizations, investigatory efforts like testing are injuries in fact when they are conducted at a cost to the organization's other activities. *See, e.g., Havens*, 455 U.S. at

379. For instance, in *Havens,* the court found that a housing organization that sent testers to investigate an apartment complex owner's alleged racial steering practices suffered an injury in fact because the expenditure of resources on testing made it more onerous for the organization to provide counselling and referral services. *See id.* Accordingly, courts in this circuit have consistently found that housing organizations, including this Plaintiff, suffer injuries in fact when they conduct testing investigations into allegedly discriminatory entities. *See Fair Hous. Justice Ctr., Inc. v. Cuomo*, No. 18-CV-3196 (VSB), 2019 WL 4805550, at *7 (S.D.N.Y. Sept. 30, 2019) (holding that FHJC had standing because it had diverted resources away from providing services in order to investigate complaints about housing discrimination); *Fair Hous. Justice Ctr., Inc. v. Allure Rehab. Servs. LLC,* No. 15-CV-6336 (RJD) (LB), 2017 WL 4297237, at *2 (E.D.N.Y. Sept. 26, 2017) (finding that testing investigations were injuries even when they were not initially in response to "prior complaints of discrimination"); *L.C. v. LeFrak Org.*, 987 F. Supp. 2d 391, 397-98 (S.D.N.Y. 2013) (finding that FHJC's testing investigation following complaints of housing discrimination constituted an injury in fact); *Fair Hous. Justice Ctr., Inc. v. Silver Beach Gardens Corp.*, No. 10-CV-912 (RPP), 2010 WL 3341907, at *6-7 (S.D.N.Y. Aug. 13, 2010) ("The diversion of Plaintiff's resources and frustration of Plaintiff's mission is the type of injury held to be sufficient by the Supreme Court and the Second Circuit.").

Here, Plaintiff alleges that it has "expended staff time and other resources to investigate and respond to Defendants' discriminatory conduct, which has diverted resources away from other FHJC activities." (Am. Compl. ¶ 19.) This allegation suffices to establish that Plaintiff has suffered an injury in fact. *See LeFrak*, 987 F. Supp. 2d at 397. Like the organizational plaintiff in *Havens,* Plaintiff provides a number of services, including "intake counseling to individuals and organizations with allegations of

housing discrimination" and "legal referrals to cooperating attorneys." (Am. Compl. ¶ 16). The time and resources that Plaintiff spent counteracting and investigating the Defendants' allegedly discriminatory conduct was time and resources that it could not spend on these other activities. In other words, Plaintiff incurred a "perceptible opportunity cost," which constitutes an injury in fact. *Nnebe*, 644 F.3d at 157. That testing investigations are included within Plaintiff's normal organizational activities does not deprive it of standing, so long as Defendants' conduct has affected the balance of resources allocated across the organization's activities as a whole. *See Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 130 (2d Cir. 2020) (rejecting a similar argument).

Defendants contend that Plaintiff's investigations were volitional and routine, and as a result, could not have constituted an injurious diversion of resources. (*See e.g.*, 203 Jay Mot. at 9.) Defendants are correct that a random, unprompted investigation is not the kind of resource diversion contemplated in *Havens*. *Cf. Allure*, 2017 WL 4297237, at *2. However, while such an investigation may not itself be injurious, it may give rise to an injury that supports standing. *See id.* For instance, in *Allure*, FHJC initiated testing investigations into nursing homes and assisted living facilities to ascertain whether they provided American Sign Language translators. *See id.* at *1. Since the initial testing visits "occurred without any prior complaints of discrimination," they could not constitute injuries in fact. *Id.* at *2. Yet, once nursing homes denied accommodation requests, further investigations became necessary to "confirm[ ] defendants' policies." *Id.* The court in *Allure* found that the expenditure of resources on these further investigations constituted an injury in fact despite the non-injurious initial investigation. *See id.*

The facts at hand resemble *Allure*. Here, Plaintiff does not allege that its initial investigation was prompted by any complaint of

discrimination. However, it does allege that it pursued a follow-up investigation after discovering the discriminatory conduct. (*See* Am. Compl. ¶¶ 45, 47.) Even if Plaintiff would have devoted resources to its initial investigation irrespective of any misconduct on Defendants' part, Plaintiff's follow-up investigation is an injury fairly traceable to the Defendants' actions. If Plaintiff's initial visit had revealed nothing untoward, it would not have needed to continue investigating Defendants. However, because the initial visit revealed indicators of discriminatory practices, Plaintiff was compelled to devote additional resources towards further investigation at the expense of pursuing its other activities. Like in *Allure*, Plaintiff suffered an injury in fact when it incurred expenditures confirming what a non-injurious initial investigation revealed.[3]

Plaintiff plainly meets the traceability and redressability elements of Article III standing. Plaintiff's injury is fairly traceable to the Defendants' allegedly discriminatory conduct because, as explained in the preceding paragraphs, Plaintiff was compelled to devote resources towards identifying and counteracting Defendants' practices. The costs of diverting resources that Plaintiff has already incurred and will continue to incur can be redressed by a favorable judicial decision awarding monetary damages and enjoining present and future misconduct.

---

[3] Defendants raise a related argument that Plaintiff "manufactured" standing by willingly incurring the costs of further investigating Defendants. (*See* 203 Jay Mot. at 19.) As a result, any injury is not traceable to Defendants' conduct, but rather to Plaintiff's own choices. (*See id.*) However, a plaintiff is not required to suffer an injury inadvertently in order to satisfy the requirements of Article III standing. *Cf. Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (holding that a plaintiff who willingly incurs a statutory penalty nonetheless suffers an injury traceable to the allegedly unlawful statute).

## B.  Statutory Standing

Prior to the 1988 amendments to the FHA, the Supreme Court consistently held that standing under the FHA was coextensive with Article III standing. *See Bank of America Corp. v. City of Miami*, 137 S. Ct. 1296, 1303-04 (2017) ("This Court has repeatedly written that the FHA's definition of person 'aggrieved' reflects a congressional intent to confer standing . . . as broadly as is permitted by Article III of the Constitution."). Though Congress "retained without significant change the definition of 'person aggrieved'" that had been broadly construed by the Court, the Court has not explicitly held that standing under the post-amendment FHA is coextensive with Article III. *Id.* at 1304. Instead, in *Bank of America*, the Court used the zone of interests test, which "presume[s] that a statute ordinarily provides a cause of action only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Id.* at 1302. The Court held that the City's "economic injuries" fell within the zone of interests because "[t]hey hindered the City's efforts to create integrated stable neighborhoods" and "reduced property values, diminishing the City's property-tax revenue and increasing demand for municipal services." *Id.* at 1304-05.

Since *Bank of America*, courts in this circuit have continued to find statutory standing under the FHA where a plaintiff has established Article III standing. *See, e.g., New York v. Scalia*, 464 F. Supp. 3d 528, 548-49 (S.D.N.Y. 2020) (finding that plaintiffs "ha[d] met their minimal burden to allege that their interest . . . is 'arguably within the zone of interests,'" where plaintiffs faced "reduce[d] . . . tax revenue and increase[d] . . . administrative and enforcement costs"); *Greens at Chester LLC v. Town of Chester*, No. 19-CV-6770 (PMH), 2020 WL 2306421, at *3 (S.D.N.Y. May 8, 2020) (holding that the New York Attorney General's "interest in preventing Defendants from ongoing discrimination is arguably within the zone of the FHA's protections of preventing

discriminatory housing practices"); *Hannan v. Rose*, No. 18-CV-9878 (PGG) (DF), 2020 WL 1903282, at *7 (S.D.N.Y. Apr. 17, 2020) ("The text of the FHA does not contain any limitation on "aggrieved person," and recent Supreme Court precedent does not suggest such a limitation."). As discussed in the preceding section, Plaintiff, a housing justice organization, was injured by the diversion of resources away from other services in order to investigate and counteract Defendants' conduct allegedly in violation of the FHA. *See* 42 U.S.C. 3602(1)(i). Thus, Plaintiff is within the zone of interests of the FHA and has statutory standing to bring this claim.

## III. FAILURE TO STATE A CLAIM

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, a complaint need not plead a *prima facie* case, *see Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208-09 (2d Cir. 2020), nor set forth "detailed factual allegations," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), in order to proceed. Instead, the complaint need only plead enough factual content to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When the facts alleged in the complaint "do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed for failing to state a claim. *Id.* at 679.

In determining whether a complaint plausibly suggests that a plaintiff is entitled to relief, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Id.* at 678-79. Allegations

that are merely conclusory, however, are not entitled to the presumption of truth and do not factor into the court's analysis. *Id.*

## B. Discussion

Defendants raise two arguments in support of their motion to dismiss for failure to state a claim. First, they argue that Plaintiff has not alleged a violation of the FHA because a mere failure to design and construct accessible housing, without an attendant sale or rental to a disabled person, is not unlawful under 42 U.S.C. § 3604(f). (*See* 203 Jay Mot. at 12-15.) Second, they argue that Plaintiff has not pleaded facts with enough specificity to plausibly suggest that Defendants violated § 3604(f)(3)(C), the design and construct provision of the FHA. (*See id.* at 18-19.) Plaintiff counters that a failure to design and construct accessible housing is, by itself, a violation of the FHA and that the Amended Complaint's descriptions of inaccessible features at the Condominium are sufficient to establish a plausible claim for relief.

### 1. FHA Design and Construct Violation

The FHA permits "aggrieved persons" to bring civil suits for violations of the statute. *See* 42 U.S.C. § 3613(a). An aggrieved person is defined as any person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). A discriminatory housing practice includes acts that are unlawful under § 3604. *See* 42 U.S.C. § 3602(f). Section 3604 provides that it is unlawful:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>
>> (A)   that buyer or renter,

11

(B)      a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C)      any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A)      that person; or

(B)      a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C)      any person associated with that person.

42 U.S.C. §§ 3604(f)(1)-(2). Finally, § 3604(f)(3)(C) defines the failure to design and construct dwellings in a manner accessible to disabled persons as a form of discrimination. *See* 42 U.S.C. § 3604(f)(3)(C).

Defendant 203 Jay contends that a failure to design and construct accessible housing is not, by itself, a violation of the FHA since §§ 3604(f)(1) and (2) prohibit discrimination only in connection with the sale or rental of a dwelling to a disabled individual. (See 203 Jay Mot. at 12-15.) Accordingly, a discriminatory housing practice occurs only once a disabled person attempts to buy or rent inaccessible housing. (*See id.*) Until then, "an improperly designed building . . . is like a potentially dangerous ditch into which no one has yet fallen – capable of inflicting harm and violating the law, but not yet actually doing either." (*Id.* at 14). Thus, Defendant argues that because Plaintiff has not alleged that any disabled person actually attempted to buy or

rent apartments within the Condominium, it has not alleged a violation of the FHA. (*See id.*)

The FHA is a sweeping antidiscrimination statute which, as the Supreme Court has repeatedly held, ought to be given a generous construction. *See, e.g., City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) ("We also note precedent recognizing the FHA's broad and inclusive compass, and therefore according a generous construction to the Act's complaint-filing provision."); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 212 (1972). In amending the FHA to incorporate accessibility requirements in the design and construction of dwellings, Congress made clear that "these basic features of adaptability are essential for equal access and to avoid future de facto exclusion of people with handicaps," and noted that they are also "easy to incorporate in housing design and construction." H.R. Rep. 100-711, at 27, *reprinted in* 1988 U.S.C.C.A.N. 2173, 2188. At the time, Congress believed that compliance with these requirements would "eliminate many of the barriers which discriminate against persons with disabilities in their attempts to obtain equal housing opportunities." *Id.* at 27-28. Congress also recognized the importance of private enforcement of the FHA when it strengthened the private enforcement mechanism of the Act by extending the statute of limitations and removing limitations on punitive damages. *See id.* at 17.

Consistent with Congressional intent and the Supreme Court's direction that the FHA be construed broadly, courts have recognized potential violations of the FHA's design and construct provision absent a showing of individual discrimination against a disabled person. *See, e.g., Garcia v. Brockway*, 526 F.3d 456, 461 (9th Cir. 2008); *Smith v. Pacific Props. and Dev. Corp.*, 358 F.3d 1097, 1104 (9th Cir. 2004); *Fair Hous. Justice Ctr., Inc. v. JDS Dev. LLC*, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020); *Nat'l Fair Hous. Alliance, Inc. v. S.C. Bodner Co.*, 844 F. Supp. 2d 940,

943-45 (S.D. Ind. 2012). Particularly instructive is *S.C. Bodner*, where a fair housing organization sued property owners for failure to comply with the FHA's design and construct requirements following a testing investigation similar to the one at hand. *See S.C. Bodner*, 844 F. Supp. 2d at 941. The court confronted the question of whether a plaintiff must allege "an instance of discrimination involving a particular individual or family in order" to plead a violation of the FHA. *Id.* at 943. The court held that a tester's mere observation of inaccessible features suffices to establish a FHA violation because requiring an affirmative act of discrimination would run contrary to the statute's purpose. *See id.* at 945. Namely, the presence of architectural barriers is itself a discriminatory practice that may deter disabled people from even attempting to rent or buy a particular dwelling. *See id.* at 944 (citing *Smith*, 358 F.3d at 1104); *see also* H.R. Rep. 100-711, at 25 ("A person using a wheelchair is just as effectively excluded from the opportunity to live in a particular dwelling by the lack of access into a unit and by too narrow doorways as by a posted sign saying 'No Handicapped People Allowed.'"). Since many would-be plaintiffs may never seek to buy or rent an apartment precisely because of discriminatory conditions, requiring individual acts of discrimination before there can be any liability would not only undercut the statute's aim of ensuring property owners' compliance with accessibility requirements, but may also encourage parties to discriminate in hopes of steering away prospective disabled applicants. Similarly, the court in *JDS Development Center* held that a housing organization, as an aggrieved person within the meaning of the FHA, attains a cause of action for a design and construct violation when its testers observe conditions at a property that violate the FHA. *See* 443 F. Supp. 3d, at 503-04; *see also Fair Hous. Justice Ctr. Inc. v. Lighthouse Living LLC*, No. 20-CV-4066 (NSR), 2021 WL 4267695, at *1, *5 (S.D.N.Y. Sept. 20, 2021) (denying 12(b)(6) motion to dismiss

where design and construction violation was merely observed by testers).

In light of the purpose and interpretations of the FHA, this court finds Defendants' argument unavailing. The FHA reflects the understanding that inaccessible design is itself an act of discrimination against disabled people—one that is no different than posting a "keep out" sign. *See* H.R. Rep. 100-711, at 25. The Act imposes an affirmative obligation on property owners to design and construct dwellings to meet minimum standards of accessibility. *See* 42 U.S.C. § 3604(f)(3)(C). To ensure compliance with these design and construction requirements, the FHA establishes a robust private enforcement mechanism. *See* 42 U.S.C. §§ 3604, 3613(a). Interpreting the statute to mean that parties may design, construct, and hold out inaccessible housing without violating the FHA, so long as no disabled people actually attempt to live in such housing, would thus plainly contravene the purpose of the Act. This is especially true when the fact of inaccessibility may itself deter disabled people from renting or buying a particular dwelling. Defendants' literalism does not comport with either precedent, statutory purpose, or practical considerations.

Notably, Defendant does not cite to any applicable precedent supporting their overly restrictive reading of the FHA. The sole case that Defendant cites to, *Fair Housing Council, Inc. v. Village of Olde St. Andrews Inc.*, is both inapposite and not binding on this court. 210 F. App'x 469 (6th Cir. 2006). Defendant relies on *Village of Olde St. Andrews* for the proposition that a FHA violation does not occur until there has been an attempted sale or rental of a dwelling to a disabled individual. (*See* 203 Jay Mot. at 14). However, the plaintiff in *Village of Olde St. Andrews* was not a disabled tenant attempting to buy or rent; it was a housing organization that conducted a testing investigation, similar to the one at hand, which was permitted to proceed on its design and

construction claim. *See Vill. of Olde St. Andrews,* 210 F. App'x at 470-71. Nowhere did the court hold that there must be a disabled individual to experience the design and construction violations for there to be a FHA violation—it just so happened that in that particular case, the plaintiff organization sent disabled testers. *See id.* at 470-71, 479-481. Rather, at issue in *Village of Olde St. Andrews* was at what point the statutory period for a design and construction claim begins. *See id.* at 479. The court held that a violation of the FHA does not occur at the conclusion of a property's design and construction period. *Id.* at 481. Instead, this is a context-dependent analysis. The court held that "in a case such as the instant case, where the plaintiff alleges that the owner or developer engaged in a policy or practice throughout the entire development of constructing housing units that fail to comply with the FHA, the continuing violations doctrine applies to toll the statute of limitations until the sale of the last unit in that development." *Id.* at 481. This holding was motivated by a concern that beginning the statutory clock at the close of the design and construction period would significantly diminish liability and circumvent the remedial intent of the FHA insofar as prospective tenants may not even visit a property until after the limitations period had expired. *See id.* at 480. As explained in the preceding paragraph, the same concern applies to Defendants' interpretation of the statute.

This court thus joins the district courts in *S.C. Bodner* and *JDS Development Center* and the Ninth Circuit in holding that a plaintiff need not allege an individual act of discrimination against a disabled person to state a violation of the FHA's design and construction provision and that a housing organization may allege discrimination on the basis of observing inaccessibility at dwellings that are held out for rent or sale.

2.   Factual Sufficiency

Defendants also argue that Plaintiff has failed to plead facts that plausibly suggest Defendants violated the FHA by failing to design and construct dwellings in accordance with § 3604(f)(3)(C). Namely, they contend that the Amended Complaint lacks specificity, that the allegations of inaccessibility are conclusory, that Plaintiff relies on the observations of unidentified testers and accessibility experts, and that Plaintiff does not cite to relevant accessibility standards. (*See* 203 Jay Mot. at 18-19.) Thus, they argue that the Amended Complaint is factually deficient and ought to be dismissed for failure to state a claim.

Plaintiff alleges that, in the course of a testing investigation, an accessibility expert and several testers observed numerous inaccessible features at the Condominium. On an initial visit, two testers observed "narrow and heavy entrance doors at the Jay Street entrance" to the building; narrow interior doors and kitchens with insufficient clear width in four apartments; and several bathrooms lacking sufficient clear floor space and containing one-inch beveled thresholds. (Am. Compl. ¶ 44.) On a subsequent visit, another set of testers made similar observations in the apartments they were shown and noted additional deficiencies, including tenant mailboxes that were too high from the ground and a two-inch beveled threshold leading to the terrace of one of the apartments. (*See id.* at ¶ 46) Finally, an accessibility expert observed that:

> a.  the route from public sidewalk to the Concord Street lobby entrance appears to have excessive slopes;
>
> b.  single leaf pivot door next to the revolving door at Concord Street lobby entrance is too heavy and appears to lack level pull side maneuvering clearances;

   c. the intercom at the Concord Street lobby appears to be outside of an accessible reach range;

   d. lack of accessible passenger loading zone at the Nassau Street lobby entrance;

   e. lack of accessible curb cut at the curb along the passenger loading zone at the Nassau Street lobby entrance;

   f. the single leaf pivot door next to the revolving door at the Nassau Street lobby entrance is too heavy and appears to lack level pull side maneuvering clearances;

   g. the intercom at the Nassau Street lobby entrance appears to be outside of an accessible reach range;

   h. the service counter in the building lobby has a lowered section, however, the lowered section of counter does not appear to be the same depth as the general counter;

   i. accessible seating does not appear to be provided at the Overlook Lounge on the 33rd floor;

   j. accessible routes do not appear to be provided around the seating and tables at the Sundeck on the 9th floor; and

   k. fitness equipment in the Fitness Center appears to lack a clear floor space for use.

(*Id.* ¶ 48). Based on these observations, Plaintiff claims that Defendants have violated 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205(c). (*See id.* ¶ 63.)

18

Plaintiff has alleged sufficient facts to state a plausible claim for relief. The Amended Complaint alleges that testers and an accessibility expert personally observed numerous instances of inaccessibility at the Condominium and, in each case, describes the nature and location of the alleged defects. Taking these observations as true, it is plausible that Defendants have run afoul of the FHA's design and construction requirements. For instance, the presence of excessively sloped routes into the building would likely render the property non-compliant with the FHA. *See* 42 U.S.C. § 3604(f)(3)(C)(iii)(I). The observations about insufficient clearance in kitchens and bathrooms similarly indicate FHA violations. *See id.* § 3604(f)(3)(C)(iii)(IV). Given that "accessibility itself is the ultimate touchstone by which conformity with the FHA is determined," Plaintiff's allegations of various forms of inaccessibility are sufficient to survive the motion to dismiss. *See United States v. Atlantic Dev. Grp., LLC*, 19-CV-9551 (LJL) (RWL), 2020 WL 3421095, at *9 (S.D.N.Y. May 12, 2020), *report and recommendation adopted*, 2020 WL 3415631 (S.D.N.Y. June 22, 2020).

It is true that, in some instances, Plaintiff does not set forth precise measurements or other objective indicia to support an allegation of inaccessibility. This does not, however, render those allegations conclusory. Plaintiff does not merely assert, without more, that there is inaccessibility present at the Condominium. Rather, Plaintiff lays out specific allegations of architectural defects that are buttressed by the personal observations of testers and experts who are familiar with what constitutes an inaccessible condition.[4] Moreover, given that a complaint need not plead evidence, *see Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir.

---

[4] Defendants take issue with the fact that Plaintiff does not state the identities of the testers or consulting accessibility expert that visited the Condominium. However, at the motion to dismiss stage, the court takes all well-pleaded factual allegations as true. That includes Plaintiff's attestation as to the credentials of the visitors it sent to the Condominium.

2014), requiring detailed measurements at the motion to dismiss stage would establish an excessively burdensome pleading standard for design and construction suits.

Even if this type of evidence were required at this stage, Plaintiff nonetheless has set forth several instances of inaccessibility that are supported by measurements. For instance, it alleges that multiple bathrooms contain one-inch beveled thresholds and that there is a two-inch threshold leading to the terrace of one of the apartments—facts which demonstrate non-compliance with the Final Fair Housing Accessibility Guidelines. *See* Final Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472-01, 9506 (Mar. 6, 1991) (requiring that thresholds at exterior doors be no higher than three-quarters of an inch); *see also Atlantic Dev. Grp.*, 2020 WL 3421095, at *8 ("[T]he Guidelines are relevant evidence for proving violation of the FHA."). The presence of some instances of inaccessibility suggests that discovery will yield evidence of more. Accordingly, Plaintiff has "nudge[d] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## IV. DEFENDANT WOODS BAGOT'S ARGUMENT CONCERNING THE SCOPE OF INJUNCTIVE RELIEF

Defendant Woods Bagot argues that Plaintiff's request for injunctive relief is inappropriate as to Woods Bagot. (Woods Bagot Mem. in Supp. of Mot. to Dismiss (Dkt. 24) at 13.) Woods Bagot does not have an ownership interest in the Condominium, nor does it have a right of access to the building. (*See id.*). Accordingly, it would not be able to comply with an injunction ordering specific performance, such as the removal of FHA violations. (*See id.*). Thus, Woods Bagot argues that injunctive relief is "improper and should be dismissed." (Woods Bagot Reply (Dkt. 27) at 8.)

Regardless of the merits of Woods Bagot's argument, the scope and appropriateness of injunctive relief is not a proper inquiry at the motion to dismiss stage. *See Chachkes v. David*, No. 20-CV-

2879 (LJL), 2021 WL 101130, at *14 (S.D.N.Y. Jan. 12, 2021) ("[T]he attack on the request for permanent injunctive relief is premature here at the motion to dismiss stage."); *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 353 (E.D.N.Y. 2007) ("[A] motion for failure to state a claim properly addresses the cause of action alleged, not the remedy sought."). Moreover, given that liability under the FHA is imposed broadly, *see Lighthouse Living LLC*, 2021 WL 4267695, at *5, Defendant does not persuade the court that Plaintiff's request for injunctive relief is so unusual as to warrant deviation from precedent. Because Defendant Woods Bagot's arguments are premature, the court declines to address them at this time.

## V. CLAIMS UNDER NEW YORK LAW

Defendants also seek to dismiss Plaintiff's claims under New York law. (*See* 203 Jay Mot. at 20.) Defendants contend that "[u]pon dismissal of plaintiffs" FHA claim, "this Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims." (*Id.* (citing 28 U.S.C. § 1367(c).) Since the court has declined to dismiss Plaintiffs FHA claims, and Defendants have not proffered any other basis for the dismissal of the New York claims, the court declines to dismiss the New York claims at this time.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are DENIED.

SO ORDERED.

Dated:      Brooklyn, New York
            August 4, 2022

                                    s/Nicholas G. Garaufis
                                    ————————————————
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge